ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| MARITZA AYALA TORO<br><br>Recurrida<br><br>v.<br>POPULAR AUTO, LLC.<br><br>Recurrente<br><br>A&G HOLDING, CORP. h/n/c CARS; CABRERA HERMANOS AUTO GROUP, LLC.<br><br>Querelladas | KLRA202400059 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos Del Consumidor<br><br>Caso Núm.: MAY-2022-0002986<br><br>Sobre: Compraventa Vehículo de Motor |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 18 de marzo de 2024.

Popular Auto, LLC [Popular o recurrente] nos solicita que revisemos la Resolución emitida por el Departamento de Asuntos del Consumidor [DACo] el 18 de diciembre de 2023. Mediante el referido dictamen, la agencia declaró *Ha Lugar* la querella presentada por la señora Maritza Ayala Toro [señora Ayala Toro o querellante-recurrida] contra A & G Holding, Corp. y Popular Auto, LLC y desestimó la acción incoada contra Cabrera Hermanos Auto Group, LLC.

Por los fundamentos que exponemos, *Confirmamos* la R*esolución* recurrida.

## I.

El 24 de mayo de 2022 la señora Maritza Ayala Toro presentó una querella en el Departamento de Asuntos del Consumidor contra A & G Holding, Corp. h/n/c Cars, Cabrera Hermanos Auto Group, LLC. Alegó que el 26 de enero de 2021

compró el auto Chevrolet Camaro de 2019 y que desde el 28 de enero de 2021 le surgieron defectos al auto.

El 18 de diciembre de 2023 se celebró la vista administrativa a la cual comparecieron todas las partes representadas por sus abogados. Tras ello, el DACo emitió una Resolución en la que declaró con lugar la querella contra A & G Holding, Corp. y Popular Auto, LLC. Desestimó la acción contra Cabrera Hermanos Auto Group, LLC.

Como hechos probados determinó lo siguiente:

1. Que surge de la factura de compraventa que el auto objeto en controversia es un vehículo de motor marca Chevrolet; modelo Camaro del año 2019.

2. De la propia factura se desprende que el auto se vendió usado y con millaje de 9444.

3. La compraventa se efectuó el 26 de enero de 2021.

4. Que el auto fue financiado por Popular Auto, L.L.C.

5. Que del testimonio bajo juramento del querellante entendimos probado que para febrero de 2021 el auto presentó problemas eléctricos con la luz de retroceso, se mantenía encendida, aunque el auto estuviera en "parking".

6. Que la querellante se comunicó con el dealer vendedor y le informaron que el auto tenía garantía del fabricante con Cabrera, y allí lo llevó.

7. El auto estuvo en trabajo de garantía en Cabrera entre el 8 al 16 de febrero de 2021.

8. Para el 26 de junio de 2021 el auto volvió a confrontar problemas mecánicos y el auto fue llevado a Alberic para servicio en garantía. Allí, se le informó a la querellante que el auto tenía el "cluster" dañado (pantalla principal del auto para que el usuario tenga la información vital sobre el estado del auto).

9. Para noviembre de 2021 el auto fue llevado nuevamente a Cabrera para el asunto del "cluster", le hicieron cambio de batería, y el auto siguió con el mismo problema del "cluster".

10. Para el 17 de mayo de 2022 el auto fue nuevamente a Cabrera y le dicen que el auto no tenía garantía. Específicamente el "cluster".

11.    La querellante no incluyó en la querella al fabricante y/o a su distribuidor.

12.    A & G Holding, Corp. fue el vendedor.

13.    Cabrera es un vendedor o concesionario de garantía para la marca Chevrolet, pero no es distribuidor del fabricante.

14.    La querellante notificó por correo certificado a Popular Auto de los problemas mecánicos en 24 de mayo de 2022.

15.    Del informe de investigación y único informe pericial en el caso se desprende lo siguiente:

> "...El día 9 de junio de 2023 las 2:05 PM se celebró una inspección conjunta en las de la parte querellada.
> Al momento de la misma, la unidad objeto de la querella se trasladó para el taller para escanear y diagnosticar la razón del porque la parte digital del panel de instrumentos y el radio no encendían.
>
> Los códigos de error fueron los siguientes:
>
> BI 325, Bajo voltaje en el circuito de alimentación del módulo de control. U1880, Pérdida de comunicación con el panel de instrumentos...
>
> Opinión Pericial:
>
> Se recomienda:
>
> El remplazo del panel de instrumentos, ya que la parte digital del mismo no funciona.
> Hacer un "wiggle test" para descartar cualquier problema de cablería.
> Verificar cablería de comunicación del radio al panel de instrumentos.
> Estimado:
> Piezas
> Panel de instrumentos $1 ,449.50.
> Labor: 8360.00
> Total: $1,809.50... "

9. [sic] Del propio informe se desprende que el millaje del auto era de 20558, y se corrobora el problema con panel de instrumentos "cluster".

12. [sic] Que la querellante no volvió a requerir servicio de garantía al vendedor porque éste le indicó que Cabrera la honraba.

13. [sic] A noviembre de 2021 el auto estaba todavía en garantía con el fabricante.

El Juez Administrativo del DACo evaluó las disposiciones legales aplicables a las obligaciones del vendedor y garantías según los artículos 1287 y 1289 del del Código Civil de 2020; además, la Regla 37 del Reglamento de Garantías de Vehículos de Motor, Reglamento número 7159 de 6 de junio de 2006. Para imponer responsabilidad solidaria a la entidad financiera, aludió a Ley de Contratos de Venta al Por Menor a Plazos, Ley 68 de 19 de junio de 1964, 10 LPRA sec. 731, *et. seq*. Tras ello, decretó que A & G Holding y Popular Auto deberán reparar la unidad de conformidad a lo establecido por el perito de DACo. En caso, de no repararse y hacerse las labores dentro del término especificado, entonces, deberán obligadas al pago del estimado de $1,809.50.

En desacuerdo, Popular Auto solicitó reconsideración. Al no recibir respuesta, presentó el recurso de revisión administrativa en este foro intermedio, alegando que el DACo erró en:

> Su interpretación del derecho aplicable para determinar que Popular Auto respondía solidariamente con el concesionario, A & G Holding Corp., bajo la responsabilidad de saneamiento de este.

Recibido el recurso, le concedimos término a todas las partes para que expusieran su posición y disponemos.

## II.

## A.

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como Ley Orgánica del Departamento de Asuntos del Consumidor, [DACo] 3 LPRA sec. 341, *et seq.*, estableció en la agencia una estructura de adjudicación administrativa "con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a

derecho". 3 LPRA sec. 341e(d); <u>Ortiz Rolón v. Armando Soler Auto Sales, Inc.</u>, 202 DPR 689, 696 (2019); <u>Amieiro González v. Pinnacle Real Estate Home Team</u>, 173 DPR 363, 372 (2008).

Para cumplir su encomienda, el DACO cuenta con un personal profesional y técnico altamente competente encargado de vindicar los derechos del consumidor de una forma agresiva y firme. <u>Ortiz Rolón v. Armando Soler Auto Sales, Inc.</u>, *supra*; <u>Ayala Hernández v. Consejo Titulares</u>, 190 DPR 547, 563 (2014); Exposición de Motivos de la Ley del DACO, 3 LPRA sec. 341b.

**B.**

La Ley Núm. 68, Ley de Ventas a Plazos y Compañías de Financiamiento, 10 LPRA sec. 731 et seq., fue aprobada en el 1964 como estatuto general sobre ventas a plazos. Esta ley dispone en el Artículo 202 (4) que:

> Todo contrato de ventas al por menor a plazos deberá contener el siguiente aviso:
> El cesionario que reciba o adquiera el presente contrato al por menor a plazos o un pagaré relacionado con éste, **quedará sujeto en igualdad de condiciones a cualquier reclamación o defensa que el comprador pueda interponer en contra del vendedor**. El cesionario del contrato tendrá derecho a presentar contra el vendedor todas las reclamaciones y defensas que el comprador pueda levantar contra el vendedor de los artículos o servicios.

10 LPRA sec. 742(4).

Como vemos, en virtud del Artículo 202 (4) de la referida Ley Núm. 68, ocurre una "relación tripartita" la cual dispone que el cesionario del contrato (la entidad financiera) **responderá en igualdad de condiciones por cualquier reclamación que el comprador pueda tener contra el vendedor original**. 10 LPRA sec. 742(4), <u>Ortiz Rolón v. Soler Auto Sales</u>, *supra*, que cita a <u>Berríos v. Tito Zambrana Auto, Inc.</u>, 123 DPR 317, 328 (1989); véase, además, <u>R & J v DACo</u>, 164 DPR 647, 655-656 (2005). Por lo tanto, por la propia naturaleza de la relación tripartita la entidad

financiera está en igualdad de condiciones que el comprador en cuanto a las reclamaciones que puede levantar contra el vendedor. Ortiz Rolón v. Soler Auto Sales, *supra*.

Ahora bien, el Artículo 209 (a) (3) de la Ley de Contratos de Venta al Por Menor, relacionada a los derechos y deberes del comprador y del vendedor indica que:

> Si el vendedor, no hubiere cumplido todas sus obligaciones para con usted, usted deberá notificarlo al cesionario, por escrito, mediante correo certificado con acuse de recibo, a la dirección indicada en este aviso, dentro de los 20 días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera usted tener en contra del vendedor. 10 LPRA sec. 749(a)(3).

El Tribunal Supremo de Puerto Rico ha aclarado que el propósito del referido artículo fue la de "proteger al cesionario de un contrato de ventas a plazos de aquellas reclamaciones por acciones de saneamiento por evicción o vicios ocultos". Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 335. En ese sentido, el requisito de notificación no se activa cuando se trata de la "nulidad por error sustancial o engaño doloso que vician el consentimiento en su origen y afectan la perfección misma del contrato." Berríos v. Tito Zambrana Auto, Inc., *supra*, pág. 336.

Dada la estrecha conexión funcional que existe entre el contrato de venta y el de financiación-aunque mantienen su independencia formal-, es fácil advertir que, bajo la situación jurídica creada, la nulidad de pleno derecho del contrato original lleva consigo la inexistencia del negocio de cesión de contrato ya que carece del objeto. *Íd*.

**C.**

El Artículo 1287 del Código Civil, establece las Obligaciones del vendedor. (31 LPRA sec. 9991), a saber:

El vendedor está obligado a:

(c) garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido. Una disminución insignificante del valor o la aptitud no se toma en cuenta.

Cuando un defecto principal se descubre dentro del período de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador.

La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental;

A su vez, el Artículo 1289 del Código Civil de 2020, 31 LPRA sec. 9993, provee para la Prescripción de las acciones de garantía. Las acciones que surgen de la garantía del goce pacífico de la cosa vendida se extinguen cuando el derecho del comprador queda saneado por la usucapión. Las acciones que surgen de la garantía del goce útil prescriben a los cuatro (4) años desde la entrega del bien vendido si este es inmueble y a **los seis (6) meses** cuando es un bien mueble. […]

**D.**

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Mun. Quebradillas, 211 DPR __ (2023), 2023TSPR6, res. 25 de enero de 2023; Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Jta. de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*,

pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Sobre las determinaciones de hechos de una agencia administrativa, la parte que las impugna tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013). Así, pues, evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. OEG v. Martínez Giraud, *supra*; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216.

En cuanto a las conclusiones de derecho estas serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5 de la LPAU, *supra*; Hernández Feliciano v. Mun. Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Claro está, la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo. Hernández Feliciano v. Mun. Quebradillas, *supra*; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591. Los tribunales deben darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Torres Rivera v. Policía de PR, 196 DPR 606, 627 (2016). Aun en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009).

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Hernández Feliciano v. Mun. Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

## III.

Popular Auto alegó que el auto de la querellante presentó un fallo parcial en el *cluster*. Sostuvo que el problema era uno intermitente al punto que desde la primera vez que se presentó en junio de 2021, no requirió atención nuevamente hasta noviembre de ese año y posteriormente hasta mayo del año siguiente. Mencionó que la querellante no le comunicó a la parte vendedora de los problemas con el *cluster* para que tuviera la oportunidad de corregir el desperfecto, tal como lo requiere la jurisprudencia.[1] Sostiene que, por la falta de notificación al vendedor, tampoco procede la acción solidaridad. Detalló que la situación de diagnosticó en noviembre de 2021, no pudo resolverse y en mayo de 2022 es que la Querellante le notificó a Popular Auto. Finalmente, adujo que "la condición que presenta el vehículo de la querellante surgió durante la vigencia de la garantía del fabricante y evidentemente, no se atendió de forma apropiada por la querellante ni por la entidad llamada a honrar dicha garantía."[2] Evaluamos.

---

[1] Citando a Ford Motor Co. v. Benet, 106 DPR 232 (1977) y García Reyes v. Cruz Auto Corp., *supra*.
[2] Revisión Judicial, pág. 6.

El 26 de enero de 2021 la señora Maritza Ayala Toro adquirió un vehículo Chevrolet en A & G Holding y Popular Auto fue la entidad financiera. Trascendió de los hechos que el 26 de junio de 2021 la señora Ayala llevó el auto a reparar con la garantía del fabricante. Allí se le informó que la unidad tenía problemas con el *cluster*. Para noviembre de 2021 llevó el auto nuevamente a garantía, le cambiaron la batería, pero el problema con el *cluster* persistió. El 17 de mayo de 2022 el auto fue llevado nuevamente a servicio y allí se le informó a la querellante que ya no tenía la garantía con el *cluster*.[3] La querellante no volvió a requerir servicio de garantía al vendedor porque éste le indicó que Cabrera la honraba.[4]

Así las cosas, el 24 mayo de 2022 la señora Ayala Toro presentó la querella en DACo y le notificó a Popular Auto por correo certificado con acuse de recibo[5].

En esa acción, el perito de DACo revisó la unidad y determinó que el costo de reparación era de $1,809.50. El DACo decretó, luego de celebrada la audiencia, que el vendedor y la entidad financiera Popular Auto eran responsables de forma solidaria, en arreglar la unidad.

Luego de revisar el expediente junto al derecho aplicable, determinamos que la decisión recurrida es adecuada.

El 26 de junio de 2021, la querellante llevó su auto a arreglar y se le identificó un problema con el *cluster*. A esa fecha aún estaba vigente el periodo de seis meses de garantía desde que compró el vehículo en enero de 2021, a tenor con el Artículo 1289 del Código Civil, supra. El inconveniente con el *cluster* persistió en noviembre de 2021, así como el 17 de mayo de 2022.

---

[3] Véase determinaciones de hechos 8, 9 y 10, apéndice pág. 18.
[4] Id, determinación de hecho número 12 [sic] pág. 19.
[5] Id., determinación de hecho número 14, pág. 18.

Es esta última visita, le notificaron a la querellante que la situación con el *cluster* ya no estaba en garantía.

En vista de que el problema con el *cluster* fue detectado inicialmente dentro del periodo de garantía, y este se extendió luego de vencida la garantía, le correspondía al vendedor asumir responsabilidad. En estas circunstancias, el vendedor está obligado a garantizar al comprador que el bien vendido tiene las cualidades prometidas. Véase Artículo 1287 del Código Civil.

En cuanto a la solidaridad de Popular Auto, el Artículo 202 (4) de la Ley de Contratos de Ventas, provee para que el vendedor, así como la entidad financiera a la que se le cedió el contrato, sean responsables en igual condición en caso de una reclamación del comprador. Esto es, el cesionario del contrato (la entidad financiera) responderá en igualdad de condiciones por cualquier reclamación que el comprador pueda tener contra el vendedor original. Véase <u>Ortiz Rolón v. Soler Auto Sales</u>, *supra*.

De manera que, Popular Auto, como cesionaria del contrato, responde ante la persona que compra la unidad. Claro está, para ello, el comprador tiene la obligación de notificarle a la entidad financiera oportunamente. Para ello, el Artículo 209 (a) (3) de la Ley de Contratos de Venta permite que, si el vendedor no cumple con todas sus obligaciones, se le notifique al cesionario, por escrito, mediante correo certificado con acuse de recibo, dentro de los 20 días siguientes a la fecha en que tenga conocimiento de algún hecho que pueda dar lugar a una causa de acción o defensa que surja de la venta y que pudiera usted tener en contra del vendedor.

En este punto, el DACo otorgó responsabilidad solidaria de Popular Auto y expresó que, "la querellante supo de su causa de acción el 17 de mayo de 2022 cuando Cabrera le indicó que el

auto no tenía garantía.  Siete días luego, notificó a Popular Auto, LLC, como acreedor financiero.  En consecuencia, responde en solidaridad legal".[6]

En nuestra función revisora, validamos esta decisión pues, en efecto, el 17 de mayo de 2022 se le notificó a la señora Ayala Toro que el *cluster* no tenía garantía.  A partir de esa fecha, la consumidora disponía de 20 días para notificar a la entidad financiera y así lo hizo el 24 de mayo de 2022.  Habida cuenta de ello es forzoso resolver que en este caso la responsabilidad de Popular Auto ante el comprador va a subsistir.  Como el auto no se pudo reparar, le corresponde al vendedor y al banco remediar la situación, según el informe que rindió el inspector de DACo en el que valoró la corrección del defecto en $1,809.50.

Así pues, conforme a la doctrina de revisión judicial, del expediente ante nuestra consideración no surge prueba alguna que nos permita variar la determinación realizada por el DACo.  La parte recurrente Popular Auto tampoco demostró que la agencia hubiese actuado de manera arbitraria, ilegal o irrazonable. Por ello, procede confirmar la Resolución impugnada.

**IV.**

Por las razones antes expresadas, las que hacemos formar parte de esta Sentencia, confirmamos la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[6] Apéndice pág. 21.